1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3

4   United States of America     :
                             :

5         vs             :   1:10-CR-00180
                             :

6                             :

7   Eugene Steven Keeney       :

8

9

10

11          BEFORE:     HONORABLE WILLIAM W. CALDWELL

12         PLACE:      Harrisburg, Pennsylvania

13         PROCEEDINGS:  Sentencing

14         DATE:       May 11, 2011

15

16

17

18

19   APPEARANCES:

20   For the United States:   Gordon A. Zubrod, Esquire
                          U.S. ATTORNEY'S OFFICE

21                        228 Walnut Street, Suite 220
                          Harrisburg, PA  17108

22

23   For the Defendant:     Gina R. Tennen, Esquire
                          Libertybell Law Group, P.C.

24                        245 East Olive Avenue, 4th Floor
                          Burbank, CA  91502

25

1          (9:55 a.m., convene.)

2          *MR. ZUBROD:*  Your Honor, we're here in the case of

3    United States versus Eugene Kenney.  Mr. Kenney was indicted on

4    June the 9th of 2010.  He entered a plea of guilty on November

5    the 22nd of 2010 to count one of the indictment, a violation of

6    Title 18 United States Code, Section 2343, which was accepted

7    by the Court, and he was released on his own recognizance.

8          The pre-sentence investigation has been completed.

9    There is a single objection before the Court.  And at this

10   time, upon resolution of that issue, the United States moves

11   for sentencing.

12         *THE COURT:*  Mrs. Tennen, do you wish to pursue that

13   objection?

14         *MS. TENNEN:*  I do not, Your Honor.  Well, I would like

15   to, first of all, say this is the first time I have appeared

16   before this Court.  So I wanted to introduce myself first.  I

17   wanted to also explain that I've submitted a sentencing

18   memorandum, which was pretty thorough.

19         *THE COURT:*  I have read that.

20         *MS. TENNEN:*  Okay.  And I know that the Court doesn't

21   usually require that.  So I have submitted that for you.  And I

22   didn't want to belabor or to reiterate all of the points in

23   there.  But if I may have an opportunity to speak.

24         *THE COURT:*  This is your opportunity.

25         *MS. TENNEN:*  Now is the time.  Okay.  Thank you, Your

Honor.

First of all, Your Honor, I wanted to explain that there was some disparity between the agreed plea agreement that Mr. Zubrod and I came to and the probation report, which I illustrated in both of my objections to the probation report, the PSR report as well as illustrated in my sentencing memorandum.

So there was some disparity between the guideline range, which I felt, and I did some pretty extensive research to try to demonstrate to the Court, that there is reasons why I vehemently disagree with the probation's assessment of their guideline range.

I feel that undue influence -- the probation feels that undue influence was present in this case. And I know that the Court has probably reviewed my arguments on that very point. And I feel that both the probation department felt that the age disparity as well as the presence of alcohol, which I explained to the Court, that that was an issue of contention.

And that was something that Mr. Zubrod and I had put into our plea agreement as a footnote to the plea agreement to show that there was a disparity, or I should say there was a footnote in the plea agreement to show that we had agreed that we --

MR. ZUBROD: No. I'm sorry. What the footnote said is the victim said that the defendant provided her with

1  alcohol.  A footnote was placed in saying the defendant
2  vehemently denies that.
3       *THE COURT:*  I understand all of that.
4       *MS. TENNEN:*  Okay, Your Honor.
5       *THE COURT:*  I understand.  I have read your sentencing
6  memorandum.  I think the issue here this morning and your
7  objection deals with undue influence.
8       *MS. TENNEN:*  That's right, Your Honor.
9       *THE COURT:*  Okay.
10      *MS. TENNEN:*  And like I said, the issue with respect
11 to the age disparity, Your Honor, was one of many issues.
12 There is -- I was trying to present to the Court that there was
13 a totality of the circumstances that I would like the Court to
14 pay attention to and to show the Court.  One of the -- give me
15 a moment, Your Honor, please.
16      One of the main issues is obviously undue influences,
17 as illustrated in United States versus Root case.  In that case
18 I was trying to show the distinction between the facts of that
19 case and Mr. Kenney's case.  And that case, the defendant in
20 that case was using a superior knowledge, persuasion,
21 manipulation to get this victim to sort of come on board with
22 his philosophies, to manipulate her into engaging in sex acts
23 with him.  And I think that there is a mentality that that
24 particular defendant used in that case.  Power of persuasion,
25 for lack of better words, to persuade that victim in the case

1   through language, through terms, through their words to get

2   that victim to come on board with his theories.

3         This case with Mr. Kenney, it's very different, Your

4   Honor.  Mr. Kenney, first of all, comes from a different place.

5   I've tried to demonstrate that.  Mr. Kenney is –– has shown

6   through history not only that he has come at a very young age

7   from a very poor and abusive childhood but he –– in which he

8   did, out of necessity to some extent, engage in some criminal

9   contact, which is over 26 years ago.

10         Coming to this point today, he has really shown growth

11   from that.  This being 26 years later, he's really grown from

12   that point.  It shows.  He is running a business.  He has had a

13   marriage for 25 years.  He has had children that he has raised

14   from very young.  He has solidarity.  He has foundations.  He

15   has consistency.

16         So coming to this point today with respect to the

17   United States versus Root case and Mr. Kenney is that undue

18   influence, age is one factor, Your Honor.  Age is –– there's

19   sort of a presumption that because there's such a distinction

20   between a person's age that there must, therefore, be

21   manipulation or persuasion or that power.  But that's not the

22   case, Your Honor.

23         Looking at the other elements of it with respect to ––

24   you know, with respect to his engagement, his discussions with

25   this girl, the girl –– and I demonstrated some bullet points in

1  my memorandum to show that she was very proactive in this

2  engagement.

3  Mr. Keeney takes full responsibility, and he

4  understands that what he did was wrong.  Mr. Kenney should not

5  have crossed the line and it was a lapse in judgment.  Okay.

6  But to the same end —— you know, and like I said, I

7  demonstrated some issues and some bullets to show that the

8  alleged victim —— or the victim, I should say, in this case,

9  was proactive in her conversations with ——

10  *THE COURT:*  I understand your argument.

11  *MS. TENNEN:*  Okay.

12  *THE COURT:*  Let me ask this question.  I'm not sure if

13  it's in the pre-sentence report.  If it is, I apologize for

14  forgetting it.  Where was the victim from?

15  *MR. ZUBROD:*  Washington state, Your Honor.

16  *THE COURT:*  Okay.  Okay.  Mr. Zubrod, do you want

17  to respond?

18  *MR. ZUBROD:*  Yes, Your Honor.  And let me first

19  respond by saying it's our requirement to respond when the

20  Court asks as to what the law or our view of the guidelines

21  are.  We have taken a different position in our recommendation

22  recommending —— we have not pushed the issue of undue influence

23  or improper influence in this particular case.

24  Our reason for doing so, we have a hostile and

25  suicidal victim, who believes that at age 18 she is going to

OFFICIAL COURT REPORTER

marry the defendant and that if she –– it was agreed by all parties that it would be a risky proposal to put someone that emotionally fragile on the stand.  We have not pushed this issue.

But the Court has asked us to respond specifically.

THE COURT:  If you wish to.

MR. ZUBROD:  I want to make sure that the Court understands what the position is, why we're not pushing this issue and we're standing by that.

But the defendant was in a mentor relationship with her for over a year whereby they communicated back and forth leading up to the sexual activity.  And while –– and the victim clearly has no ax to grind against the defendant.  And she said that I was the aggressor, I was the person who was out front trying to get him to come with me.  She has no ax to grind against him.  And yet, she was the one who said he provided the alcohol to her.

So I think there is a basis for the Court making that finding.  Again, we're not asking the Court to.  Our position is based upon these things that the –– that enhancement not be applied.  But that's our position.

THE COURT:  Okay.  Well, it's a little difficult for anyone, I think, to judge the matter of undue influence when you don't have both sides of the issue before you.  All I can go by is what is in the pre-sentence report and what's been

1    revealed in the sentencing memorandum and so forth.

2              It does seem to me certainly, Mr. Kenney is accepting

3    responsibility.  And I'm not condoning the action, but I really

4    do believe that the form of undue influence that's contemplated

5    by the guidelines does not exist in this case.

6              So I'm going to sustain that objection.  I think that

7    removes four points from the --

8              *MR. ZUBROD:*  I think two, Your Honor.

9              *THE COURT:*  Two.

10             *MS. TENNEN:*  I believe so, Your Honor.

11             *THE COURT:*  And that takes the guideline then to what,

12   46 to 57?

13             *MR. ZUBROD:*  Yes, sir.

14             *THE COURT:*  All right.  Then we're prepared to

15   proceed.

16             *MS. TENNEN:*  Your Honor, Mr. Kenney, first of all,

17   would like to say something to the Court, but he also does, and

18   if I may ask the Court if he would be -- it is 10:00.  I have

19   prearranged Mr. John Kobierecki, who has been a therapist for

20   Mr. Keeney for this year period and he's been seeking

21   counseling, and I have arranged, if the Court would allow, of

22   course, to have him on the telephone.  He's at another hearing

23   which he has to testify at.  So...

24             *THE COURT:*  Where is he located physically?

25             *MS. TENNEN:*  I believe --

1    *THE DEFENDANT:*  Toward Williamsport.  Williamsport

2    area.

3    *MS. TENNEN:*  So I apologize to the Court.  This is not

4    my usual method of presentation.  But if the Court would allow

5    to try him on the phone, I would like him to speak.

6    *THE COURT:*  What is his testimony going to be?

7    *MS. TENNEN:*  Your Honor, he has visited and seen

8    Mr. Kenney on a number —— quite a number of occasions

9    throughout this past year.  He has —— Mr. Keeney has sought

10   therapy with him in order to help him deal with this, his

11   problem emotionally and also confront head-on these issues.

12   Mr. Kobierecki wanted to just make a few statements

13   about his progress so the Court —— so when I finally do the

14   wrap for the Court and ask the Court for where I'm going with

15   this, it would kind of come into play.  It would make more

16   sense to the Court why I'm asking for the things that I'm

17   asking for.

18   *THE COURT:*  Is there some reason why I don't have a

19   written report from this gentleman?

20   *MS. TENNEN:*  You know, Mr. Kobierecki did some prior

21   ones.  He kind of did an attendance one.  He didn't ——

22   *THE COURT:*  Okay.  You answered my question.

23   *MS. TENNEN:*  I'm sorry.  There is no particular reason

24   Mr. Kobierecki didn't prepare one.  And I think he would

25   prefer —— he had mentioned he would prefer to speak.

1          MR. ZUBROD:  Counsel had requested Mr. Kobierecki to

2    supply a written memo.

3          MS. TENNEN:  Yes, I did.

4          MR. ZUBROD:  Yeah.  And he simply did not comply with

5    your request but said he would be happy to discuss it by phone.

6          MS. TENNEN:  Right, Your Honor.

7          THE COURT:  I don't think this is an appropriate

8    procedure for me at a sentencing to hear a witness on the

9    telephone.  So I'm not -- I mean, I'll take what you are

10   saying.  I'm sure he would have positive things to say about

11   Mr. Keeney and his progress, but I think we'll skip the

12   telephone call.

13         MS. TENNEN:  Okay.

14         MR. ZUBROD:  I would note, Your Honor, that a

15   psychologist did do a very thorough battery and workup, and I

16   doubt that this other individual could match the quality of the

17   work that was done in that report.

18         MS. TENNEN:  Your Honor, as well, I do have some other

19   character witnesses that would like to speak on Mr. Keeney's

20   behalf.  That being his wife, Terry Keeney, and his nephew,

21   Colby, and his stepdaughter Courtney.  As well as Frank, who is

22   his oldest friend of 37 years.  And if I might, if the Court

23   would allow for them to make a brief, less than two-minute

24   statement to the Court, each of them.

25         THE COURT:  All right.  Sure.


                    OFFICIAL COURT REPORTER

1          MS. TENNEN: Okay. Thank you, Your Honor.

2          THE COURT: You can have them just come up and stand

3     beside you.

4          MS. TENNEN: Okay. Thank you. Let me just go get

5     them.

6          THE WITNESS: Good morning, Your Honor. My name is

7     Colby.

8          THE COURT: Do you want to ask the questions?

9          MS. TENNEN: If it would be okay, Colby -- we have

10    preprepared. We have spoken before this date, and he just

11    wanted to make some brief statement.

12         THE COURT: The witness should be identified. Would

13    you ask him the question?

14         MS. TENNEN: Yes. Can you state your name for the

15    record?

16         THE WITNESS: My name is Colby Swartz.

17         MS. TENNEN: Okay. Colby, would you care to make some

18    statements on behalf of Mr. Keeney today and state who -- what

19    your relationship with Mr. Kenney is.

20         THE WITNESS: My relationship is I'm his nephew. I've

21    known him pretty much all my life. I have worked for him now

22    for many years. He runs a great business. He's pretty much

23    the key in the business. He makes everything run in turn.

24    He's real hard working. And I don't believe that, you know,

25    until that point in my life where I went to work for him that I

1    learned the true meaning of work.  He works hard, and he

2    expects his employees to work hard.

3          He's somebody that, you know, I've looked up to and I

4    have counted on.  And just recently I've been doing remodeling

5    on my house.  And you know how hard it is to get people to come

6    over and give you a hand on that, but he's been one of the few

7    people that I've been able to count on, and he's been there

8    when he said he was going to be there, on time, ready to go.

9    He's made a lot of great progress in that for me.

10          *THE COURT:*  Thank you, Mr. Colby.

11          *THE WITNESS:*  Thank you, Your Honor.

12          *THE COURT:*  You can just call the next witness.

13          *MS. TENNEN:*  Okay.  Thank you.  Courtney.

14          State your name for the record.

15          *THE WITNESS:*  My name is Courtney Nicole.  And I'm

16   Gene's oldest stepdaughter.  I hope today to give you a little

17   sense of the man I know.  Gene and my mom married when I was

18   four years old.  He is pretty much the man who has raised my

19   sister and I, pretty much the only father figure I have ever

20   known.

21          He has always been very driven and a very hard worker.

22   From the time he was actually very young, he became a

23   successfully businessman entirely on his own.  Started a

24   business from the ground up and able to support our family and

25   give us a better life than what he had as a child.

OFFICIAL COURT REPORTER

1          With that, actually watching him, it instilled a very

2   good work ethic in me and has made me a successful adult, as

3   well.

4          As adults we still look to him for advice and for

5   guidance.  He also is just a shoulder to lean on and somebody

6   that definitely leads us in the right direction and has never

7   steered us wrong.  He has always been there for us.

8          And today, as a family, we stand in court today to be

9   here for him.  I just hope that you take it into consideration.

10          THE COURT:  I certainly will.  Thank you.

11          THE WITNESS:  Thank you.

12          MS. TENNEN:  Frank.

13          THE WITNESS:  Good morning, Your Honor.  My name is

14   Frank Fish.  I have traveled here from Las Vegas, Nevada to

15   speak in behalf of my good friend, Gene.  We've been friends

16   for over 37 years.  I've grown to know Gene from his troubled

17   childhood and family to the man that stands before you today,

18   very humble.

19          I have witnessed for the last 24 years with his wife,

20   Terry, and his two stepdaughters just the man that -- and

21   businessman that he has become from a small business to a

22   million dollar company, just supporting his family in every

23   way.

24          And I believe the lapse in judgment that he had, he

25   will change his attitude completely about his life and

OFFICIAL COURT REPORTER

1  everything for the Court.

2       *THE COURT:*  Thank you, Mr. Fish.  Appreciate you

3  coming.

4       *MS. TENNEN:*  State your name for the record and your

5  relationship to Mr. Keeney.

6       *THE WITNESS:*  My name is Terry Kenney, and I'm

7  Eugene's wife.  I would like to express regret that we have to

8  all be here today because of Gene's actions.  And I would like

9  to also state that I am heartbroken about the distress and

10 anguish that has been caused to this family because of it.

11      Unfortunately, once we do something, it's impossible

12 to take it back.  So we just have to do what is possible for

13 us.  And I do believe that Gene is trying very hard to do what

14 he can.  He and I will be married for 25 years in November.  He

15 has been an exceptional partner.  We have seen each other

16 through just about everything that has come our way.

17      These have been the happiest 25 years of my life.  We

18 complement each other perfectly.  And we depend on each other

19 for support.  We love each other unconditionally.  And it was

20 for these reasons that I decided that I needed to react to this

21 situation calmly and with as much insight as possible.

22      So I felt I had an interesting vantage point here, and

23 I tried to remember everything I knew for sure.  And then I

24 spoke with my daughters, which was very comforting to me.  And

25 then I read the reports and the psychiatric evaluations, the

1  statements, and I asked my husband questions and I scrutinized

2  his answers.  And I waited and I watched everything.

3        And I noticed that Gene was having trouble sleeping at

4  night.  And then I would find him in the wee hours of the

5  morning; he would be in our family room reading books that he

6  borrowed from a man at the therapy group.  The man had said

7  they helped him.  Or sometimes he would be reading other

8  self-help books that he had or sometimes the Bible.  Sometimes

9  he would just be reflecting on the mess that he had created.

10        During this time Gene was under house arrest.  So he

11  was spending more time at home.  And he wasn't changing the oil

12  in the car or mowing the lawn.  And we began to -- we began to

13  talk more together.  He was helping with the housework.  And we

14  were talking to each other the way we used to, and I saw Gene

15  making progress.  And so I knew he was trying hard to improve,

16  and I began to believe in my husband again.

17        I decided that he deserved my love and support.  And

18  so we renewed our commitment to each other and our devotion to

19  our faith, which we had neglected for some time.  We

20  resurrected our dreams and our goals and our values.  And then

21  I remembered something Gene used to tell us all, our whole

22  family, to inspire our girls when they were growing up.  He

23  would say don't say can't, say won't.

24        He had overcome many obstacles in his life, and he

25  achieved a measure of success because he lived by those words.

OFFICIAL COURT REPORTER

1    Now those words would inspire me once again.  I was determined

2    and I am determined that I will never say can't or won't.  I

3    will find the strength and the courage to see us through this

4    and to help Gene in any way that I can.  And while I know life

5    doesn't come with any guarantees, and neither does marriage, I

6    trust my husband and I have faith and I am confident that this

7    will never, ever happen again.

8           And I just want to thank you for your undivided

9    attention to my thoughts.

10        *THE COURT:*  I appreciate you being here.  I certainly

11   understand your feelings and sympathize with you.

12        *THE WITNESS:*  Thank you.  I am grateful for your

13   attention.

14           *THE COURT:*  Thank you.  Okay.

15        *MS. TENNEN:*  Mr. Keeney is the last one on the deck.

16   He would like to make some statements to Your Honor.

17           *THE COURT:*  Mr. Keeney.

18        *THE DEFENDANT:*  Thank you, Your Honor, for allowing me

19   to speak.  First and foremost, I would like to apologize deeply

20   to everybody that has to be here because of me, particularly to

21   my victim and her family.

22           For the past 31 months I have thought long and hard

23   about what I've done and the people I have hurt.  As my wife

24   said, many nights I have been awake thinking about everything

25   that I've done.  I have prayed that somehow the pain would

1   subside for them.   To this day I have yet to forgive myself.

2          Under no circumstances -- under no circumstances could

3   this ever be excused.   This has brought so much undue reproach

4   upon both my family and my friends.   Unfortunately, I cannot

5   undo the past.   However, I can and I will do everything

6   possible to make amends to everyone, to whatever extent it

7   takes for me.   I can change and I am going to change.   There is

8   never a chance that this will ever happen again.   I promise

9   that.

10         As my attorney said, I'm currently actively

11  participating in extensive counseling.   I have been there for

12  11 months, in which both includes group and private therapy.

13  Today I have a better understanding as to what it was within me

14  that allowed me to do what I have done.

15         My goal is to continue this for as long as it takes to

16  complete and gain insight as to who I am and what steps are

17  necessary to absolutely, again, ensure that this will never

18  happen again.

19         I have learned although never an excuse for conduct,

20  my past childhood and adolescent years have caused me deep

21  emotional issues that have carried many years on into

22  adulthood, ultimately leading me here.   I look back and truly

23  regret not properly dealing with them before all of this.   Had

24  I, I believe this would have never occurred.

25         I was too embarrassed.   I was too ashamed of the

OFFICIAL COURT REPORTER

secrets of my family and my past.  I was so ashamed I could barely talk to my wife about it.  Recently we discuss it more. I have always tried to suppress everything by ignoring it, hoping it would all just go away.  I know that that doesn't happen now.  I know our ghosts of our past are forever present until we properly deal with them.

I stand before you today, Your Honor, willing to take the punishment that is due.  It is my sincere hope that today will give my victim and their family closure to this, and they can move forward.

I am committed to seeing this to the end and then once again returning to society a good person and an asset.  I feel that I still have many good things to offer, if given the chance.  I am determined to forever improve myself and to be a better man again one day.

That's basically all I have to say.  I am very sorry.

THE COURT:  Thank you, sir.  Mr. Zubrod.

MR. ZUBROD:  Your Honor, I'm required to advocate for the victim in this case.  It's clear that remorse is present in this situation.  It is clear that the defendant has a support network of family that has stayed with him.  Remorse is present.

But the terrible damage has been done.  This 14 year old was a troubled kid and the defendant knew that.  He knew it for a year, because even after her mother had forbidden her to

1  have contact with him, he sent her a cell phone that they could

2  maintain contact.  She's a train wreck today.  She has had two

3  suicide attempts.  She is -- lives in this dreamworld that she

4  is going to be reunited with the defendant in the future.

5          I would also point out that we have had the

6  psychological assessments of the defendant.  I would simply

7  point out that there's a study by Michael Seto, who is at the

8  Center for Addiction and Mental Health at the University of

9  Toronto, and he said when he did a study of people involved in

10  child pornography; the question was what is the risk of a

11  contact offense for a person who has been convicted under the

12  child pornography statutes, and he said it is unknown.  All

13  that you can show is that people who have had a prior contact

14  offense are at the highest risk for reoffending.

15          And for that reason, we feel that a jail sentence is

16  appropriate, that the guideline range that has been recommended

17  both by the defense and by the United States is an appropriate

18  range.  We recommend the low end of that range, and we ask in

19  any case for just and appropriate sentence.

20          THE COURT:  This is an extremely sad case for

21  everybody involved.  There is just no way that Mr. Kenney can

22  justify what he did, even though the victim here may have been

23  willing and even aggressive.  A 50-year-old man, or whatever

24  you were at the time, maybe 48, and a 14-year-old girl, there

25  is just no way around the terrible thing that happened out

1   there in California.

2          I've looked, Mr. Kenney, at your background, and you

3   had some serious problems when you were young, 18 and 20 years

4   old, and you seem to have overcome those problems by building a

5   very successful business that you operate and you have the

6   support of friends and family, even though this sort of thing

7   would turn some people away.

8          I was very impressed with your wife's statement, and I

9   know that you were, as well.  But there is no way that the

10  Court can avoid sending you to jail.

11         I've considered the 3553(a) factors, and obviously

12  this is a very serious offense.  It's one that does require

13  some punishment and also hopefully give you time to recognize,

14  if you haven't already, a harm that's been done not only to the

15  victim but to yourself and your family.

16         I do believe, considering all of the circumstances

17  here, that some variance is justified from the sentencing

18  guidelines.

19         So pursuant to the Sentencing Reform Act, it's the

20  judgment of the Court on count one that the defendant, Eugene

21  Keeney, is committed to the custody of the Bureau of Prisons to

22  be imprisoned for a term of 36 months.  We recommend that the

23  Bureau of Prisons provide the defendant with sexual offender

24  and mental health counseling while he is incarcerated.

25         We find that the defendant has the ability to pay a

1   fine; and accordingly, we order that he pay the clerk, United

2   States District Court the sum of $10,100, consisting of a

3   special assessment of $100, which is due immediately, and a

4   fine of $10,000.  Payment of interest is waived.

5        During the term of imprisonment the fine is payable

6   every three months in an amount after a telephone allowance

7   equal to 50 percent of the funds deposited into the defendant's

8   inmate trust fund account.

9        In the event that the fine is not paid in full prior

10  to commencement of supervised release, the defendant shall, as

11  a condition of release, satisfy the amount due in monthly

12  installments of no less than $200 to commence 30 days after

13  release from confinement.

14       Upon release from imprisonment, the defendant is

15  placed on supervised release for a term of 20 years.  Within

16  three days of his release from the custody of the Bureau of

17  Prisons, he shall report in person to the probation office in

18  the district to which he is released.

19       While on supervised release, the defendant shall not

20  commit any federal, state or local crime and shall not possess

21  a dangerous weapon.  The defendant shall comply with the

22  standard conditions that have been adopted by this Court, and

23  in addition, shall submit to one drug test within 15 days of

24  commencing supervision and at least two periodic drug tests

25  thereafter.

1          The defendant shall comply with the requirements of

2    the Sex Offender Registration and Notification Act.  The

3    defendant shall participate, at his expense, in a sex offender

4    treatment program which may include risk assessment testing,

5    counseling, therapeutic polygraph examinations, and shall

6    comply with all requirements of the treatment provider.  The

7    treatment is to be conducted by a therapist approved by his

8    probation officer.

9          The defendant shall have no direct or indirect contact

10   with any person under the age of 18 except in the presence of

11   an adult who is aware of the nature of the defendant's

12   background, including the current offense, and who has been

13   approved by the probation officer.

14         The defendant shall submit his person and property to

15   search at any time with or without a warrant by any law

16   enforcement or probation officer with reasonable suspicion

17   concerning a violation of the conditions of supervised release.

18         The defendant shall comply with the terms and

19   conditions set forth in the computer monitoring/filtering

20   participation -- participant agreement for the Middle District

21   of Pennsylvania and shall pay the costs of the computer

22   monitoring/filtering program not to exceed the monthly

23   contractual rate in accordance with the probation officer's

24   instructions.

25         The defendant shall undergo a mental health

OFFICIAL COURT REPORTER

1 evaluation, and if recommended, shall satisfactorily complete a

2 program of outpatient or inpatient mental health treatment.

3 And he shall cooperate in the collection of DNA as directed by

4 his probation officer, unless a sample was collected during his

5 confinement.

6      We are going to approve Mr. Keeney for voluntary

7 surrender.  We presume there is no objection to that.

8      *MR. ZUBROD:*  No, sir.

9      *THE COURT:*  I direct that he surrender at the

10 institution designated by the Bureau of Prisons before

11 2:00 p.m. on Monday, June the 13th.  The defendant shall

12 contact the United States Marshal's Office no later than three

13 days prior to the -- to that date to be notified of the place

14 of his confinement.

15      Mr. Kenney, I take no pleasure in imposing this

16 sentence upon you, but I think as I've indicated, it's

17 deserved.  And I hope that you will be true to your word, get

18 through this and get back to a life that you can be proud of.

19      I now want to advise you of your appellate rights.

20 You can appeal your conviction if you believe that your guilty

21 plea was somehow unlawful or involuntary or if there is some

22 other fundamental defect in the proceedings that was not waived

23 by your guilty plea.  You also have a statutory right to appeal

24 your sentence under certain circumstances, particularly if you

25 think the sentence is contrary to law.

OFFICIAL COURT REPORTER

1        Any such appeals must be filed within 14 days of

2    today's date.  If you're unable to pay the costs of an appeal,

3    you can apply for leave to appeal in forma pauperis, and if you

4    so request, the clerk of courts will prepare and file a notice

5    of appeal on your behalf.

6        And I'm sure Ms. Tennen will discuss with you whether

7    an appeal is anything you should be considering.  But for the

8    record, Mr. Keeney, do you understand that should you want to

9    appeal for any reason, you must do so within the next 14 days?

10       *THE DEFENDANT:*  Yes, Your Honor.

11       *THE COURT:*  All right.  Is there anything to be

12   dismissed, Mr. Zubrod?

13       *MR. ZUBROD:*  No, sir.

14       *THE COURT:*  All right.

15       *MS. TENNEN:*  Your Honor, if I may really quickly, if

16   you would be so kind as to recommend -- I know that there is a

17   possibility to recommend to the Bureau of Prisons that he is

18   put in a low security facility, if that would be okay, Your

19   Honor.

20       *THE COURT:*  Okay.  We certainly do heartily recommend

21   to the Bureau of Prisons that he be placed in a low security

22   institution, if that is available and appropriate, keeping in

23   mind that the defendant's family, I believe, is in this area

24   and probably would appreciate the defendant being confined

25   somewhere in the vicinity.

OFFICIAL COURT REPORTER

1          *MS. TENNEN:*  Yes.

2          *THE COURT:*  This case is concluded.

3          We'll take a ten minute recess at this time.

4          *MR. ZUBROD:*  Thank you, Your Honor.

5          *MS. TENNEN:*  Thank you, Your Honor.

6          *THE COURTROOM DEPUTY:*  Court is in recess for ten

7     minutes.

8               (10:31 a.m., court adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL COURT REPORTER

```
 1                    REPORTER'S CERTIFICATE

 2

 3              I, Lori A. Fausnaught, RMR, CRR, Official Court

 4   Reporter for the United States District Court for the Middle

 5   District of Pennsylvania, appointed pursuant to the provisions

 6   of Title 28, United States Code, Section 753, do hereby certify

 7   that the foregoing is a true and correct transcript of the

 8   within-mentioned proceedings had in the above-mentioned and

 9   numbered cause on the date or dates hereinbefore set forth; and

10   I do further certify that the foregoing transcript has been

11   prepared by me or under my supervision.

12
                                s/Lori A. Fausnaught, RMR, CRR
13                              _____
                                Lori A. Fausnaught, RMR, CRR
14                              Official Court Reporter

15

16        REPORTED BY:

17             LORI A. FAUSNAUGHT, RMR, CRR
               Official Court Reporter
18             United States District Court
               Middle District of Pennsylvania
19             240 West Third Street, Suite 446
               Williamsport, PA 17701
20

21
                    (The foregoing certificate of this transcript
22   does not apply to any reproduction of the same by any means
     unless under the direct control and/or supervision of the
23   certifying reporter.)

24

25
```

OFFICIAL COURT REPORTER